1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MALIK JONES

11            Plaintiff,                    No. CIV S-08-2607 MCE CKD P

12       vs.

13   J. McGUIRE, et al.

14            Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   under 42 U.S.C. § 1983.  His first amended complaint alleges defendants Bainbridge, Follosoco

18   and Lipton used excessive force against him while he was an inmate at High Desert State Prison

19   (HDSP) and that Lipton was deliberately indifferent to a serious medical need, all in violation of

20   the Eighth Amendment.  The defendants have filed a motion to dismiss the excessive force

21   claims for failure to exhaust administrative remedies.  They have also filed a motion for summary

22   judgment.  Both motions have been fully briefed.

23       I.   Plaintiff's allegations

24            Plaintiff alleges three instances of excessive force.  First, he states that on

25   September 21, 2007, defendant Bainbridge used excessive force in handcuffing plaintiff, who

26   was at the time in a wheelchair and already suffering from an injured right arm.  See First

1

1    Amended Complaint, ¶¶ 33-34 (Docket No. 32).  Second, he alleges that on October 16, 2007,

2    Bainbridge searched him as he was leaving the prison law library and, using excessive force,

3    squeezed his buttocks and testicles.  <u>Id.</u> at ¶ 43.  Third, plaintiff alleges that on November 6,

4    2007, he "blacked out" in his cell.  <u>Id.</u> at ¶ 46.  He states that he regained consciousness as he

5    was being taken to the prison medical clinic, where he refused medical treatment and asked to be

6    allowed to return to his cell.  <u>Id.</u> at ¶ 47.  Instead, defendant Follosoco allegedly "maliciously and

7    sadistically twisted and pried open plaintiff's left arm and hand, and defendant Lipton

8    maliciously and sadistically grabbed plaintiff's left thumb and wantonly [and] repeatedly stuck

9    plaintiff with a needle, causing him to bleed."  <u>Id.</u>

10          The first amended complaint also alleges deliberate indifference to a serious

11   medical need against defendant Lipton, nurse at HDSP.  It states that on September 13, 2007,

12   plaintiff was assaulted in his cell by several prison guards, leaving him with "severe chronic pain

13   in his chest, right arm and back."  <u>Id.</u> at ¶¶ 30-31.  Later, still in his cell, plaintiff told Lipton he

14   was in pain and "show[ed] defendant Lipton abrasions and scrapes.... Lipton claimed she was

15   going to come back and do [an] incident report on plaintiff's injuries and give him medical care

16   for them.  Then [she] left and never came back."  <u>Id.</u> at ¶ 31.

17          II.     <u>Exhaustion of plaintiff's claims</u>

18          The defendants argue that plaintiff did not submit any of his three allegations of

19   excessive force to the grievance process at HDSP, thus leaving those claims unexhausted and

20   subject to dismissal.  Defendants do not include the allegation of inadequate medical care as a

21   subject of their motion to dismiss.  <u>See</u> Motion at 1 n.1 (Docket No. 57).[1]

22          A motion to dismiss for failure to exhaust administrative remedies prior to filing

23   suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  <u>Wyatt v. Terhune</u>, 315 F.3d

24   1108, 1119 (9th Cir. 2003).  In deciding a motion to dismiss for failure to exhaust non-judicial

25   _____

26          [1] The court references the page numbers assigned by the court's CM/ECF system, where
     applicable.

remedies, the court may look beyond the pleadings and decide disputed issues of fact.  Id. at

1120.  If the district court concludes that the prisoner has not exhausted non-judicial remedies,

the proper remedy is dismissal of the claim without prejudice.  Id.

The exhaustion requirement is rooted in the Prison Litigation Reform Act

(PLRA), which provides that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, . . . until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  The California Department of Corrections and

Rehabilitation's (CDCR) regulations provide administrative procedures in the form of one

informal and three formal levels of review to address plaintiff's claims.  See Cal. Code Regs.

tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a prisoner has

received a "Director's Level Decision," or third level review, with respect to his issues or claims.

Cal. Code Regs. tit. 15, § 3084.5.

Under CDCR regulations, an inmate must file his prisoner grievance within

fifteen days of the events grieved.[2]  If a plaintiff failed to exhaust available administrative

remedies by filing a late grievance, his case must be dismissed.  Woodford v. Ngo, 548 U.S. 81

(2006).  Exhaustion during the pendency of the litigation will not save an action from dismissal.

McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).  Exhaustion "'means using all steps

that the agency holds out, and doing so properly....'"  Woodford, 548 U.S. at 90 (citation

omitted).  Therefore, an inmate must pursue a grievance through every stage of the prison's

administrative process before a civil rights action is filed, unless he can demonstrate a step was

not available to him.

////

---

[2]  California regulations do not require an inmate to specifically identify a prison official in a grievance.  Therefore an inmate need not name a particular individual during the grievance process in order to name that person as a defendant and meet the PLRA's exhaustion requirement when he files suit.  See Jones v. Bock, 549 U.S. 199, 218-219 (2007); Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).

1    The term "available" in prisoners' civil rights cases stems directly from the

2   PLRA, which bars an action "until such administrative remedies as are available are exhausted."

3   42 U.S.C. § 1997e(a).  The Ninth Circuit has held that a prisoner has met the "availability"

4   requirement if the prisoner attempted to complete the grievance process but was precluded by a

5   prison official's mistake.  See Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010).  The

6   reasoning in such cases is the prison official's action (or inaction) effectively rendered further

7   exhaustion unavailable under the PLRA.  Other circuit courts have held that a prisoner has

8   satisfied the exhaustion requirement if prison officials prevent exhaustion through their own

9   misconduct or fail to respond to a grievance within the applicable time limits.  There too, courts

10   have applied the "availability" requirement of the PLRA.  See, e.g., Kaba v. Stepp, 458 F.3d 678,

11   684 (7th Cir. 2006) (administrative remedy not available if prison employees do not respond to a

12   properly filed grievance or use affirmative misconduct to obstruct exhaustion).

13    Defendants bear the burden of proving plaintiff's failure to exhaust.  Wyatt, 315

14   F.3d at 1119.  The court resolves all ambiguities in favor of the non-moving party.  Estelle v.

15   Gamble, 429 U.S. 97, 106 (1976).

16    A.   Exhaustion analysis

17    The defendants' principal evidence that plaintiff failed to exhaust any of his

18   allegations of excessive force is a sworn declaration by D. Clark, Appeals Coordinator for CDCR

19   at High Desert State Prison.  Clark concludes that, based on his review of HDSP's appeals

20   records, "there is no record of any appeal being accepted for review from Jones in September

21   2007 through January 2008 concerning such allegations."  Declaration of D. Clark, ¶ 5 (Docket

22   No. 57-4).  The Clark declaration's only exhibit is a "printout of the records from the Inmate

23   Appeals Tracking System concerning Jones' inmate appeals at HDSP."  Id. at ¶ 7.  The printout

24   gives the date, log number and generic "issue" (e.g., "staff complaint" or "medical") averred in

25   an inmate's grievance.  The specific factual allegations of a particular grievance cannot be

26   ascertained from the tracking system's record.  See id., Ex. A.

1    In all, Clark summarizes the contents of seven appeals filed from September 2007

2  to January 2008, thus going well past the fifteen-day limitations period for each of plaintiff's

3  allegations of excessive force.  Each of those grievances is reflected on the appeals tracking

4  system record attached to Clark's affidavit.  Still, that record does not contain enough

5  information for the court to determine what allegations the plaintiff actually submitted to the

6  HDSP grievance process and thus corroborate Clark's summaries.  Indeed it is well established

7  that a prison appeals officer's summary of an inmate's grievance history is by itself inadequate to

8  meet the burden of showing that a plaintiff failed to exhaust his administrative remedies before

9  he filed suit.  See Wyatt, 315 F.3d at 1120 (reversing the district court's dismissal for non-

10  exhaustion because an appeals officer's affidavit did not "establish that the one appeal shown on

11  the document relates to a subject other than the prison... regulations challenged here").  It would

12  have been an easy matter to attach copies of the grievances plaintiff submitted while his fifteen-

13  day window for each alleged incident was open.  The defendants did not do that, and the system

14  tracking record is not a sufficient substitute.  Insofar as the Clark declaration and its lone

15  attachment are concerned, "[t]here is no evidence... establishing that the 'Appeal Record' is what

16  defendants say it is."  Id.

17       1.  Alleged incident of September 21, 2007

18    Clark's affidavit states plaintiff filed two staff complaints around the time

19  defendant Bainbridge used excessive force against plaintiff on September 21, 2007.  One

20  grievance was received that same day, but Clark asserts that it dealt with an event that happened

21  on September 13.  He states another grievance was received on October 4, but he says it

22  concerned plaintiff's allegation that a non-party officer aimed a loaded rifle at him without cause.

23  Again, mere summaries of these appeals are insufficient to meet the defendants' burden to prove

24  non-exhaustion.

25    The defendants do not support their argument with just the Clark declaration,

26  however.  They acknowledge that plaintiff attached two grievances to the original complaint,

1    marked Exhibits "D" and "E."  Only Exhibit D is potentially relevant here.[3]  It is an

2    administrative appeal plaintiff submitted September 30, 2007, nine days after defendant

3    Bainbridge allegedly used excessive force on plaintiff.  Plaintiff's principal complaint in that

4    appeal is directed at an Officer Vincent, the guard who allegedly aimed a loaded rifle at plaintiff,

5    an incident that is not a subject of this case.  However, the grievance form also contains a more

6    general reference to plaintiff's "fear that... officers will... come in [the] cell and assault me

7    again."  Original Complaint, Exhibit D at 48 (Docket No. 1).  According to Estelle, supra, the

8    ambiguity raised by this reference to prior assaults by officers should be resolved in plaintiff's

9    favor in determining whether he exhausted his allegation that defendant Bainbridge used

10   excessive force on September 21.  However, even giving plaintiff that benefit of the doubt, it is

11   clear that plaintiff focused solely on his allegation against Officer Vincent through the remaining

12   stages of the appeals process.  His appeals of the decisions at the first and second appellate levels

13   do not mention anything that could be construed as a complaint about defendant Bainbridge's

14   conduct on September 21.  See id. at 49.  Even if he was referring to defendant Bainbridge at the

15   beginning of this particular grievance, then, he abandoned that part of his complaint in the last

16   two stages of his appeal.

17            The only remaining appeal that could plausibly demonstrate exhaustion of the

18   September 21 incident is the grievance assigned as Log No. HDSP-D-07-03212, which was

19   received at the first formal level of review on the same day.  Again, defendants have inexplicably

20   failed to submit a copy of that appeal.  However, plaintiff has provided it as Exhibit A to his

21   opposition to the motion for summary judgment.  Plaintiff submitted Log No. HDSP-D-07-03212

22   on September 16, 2007.  See Plaintiff's Opp'n to Summary Judgment, Exhibit A at 15 (Docket

23   No. 61).  That date precedes the alleged incident of September 21, so it cannot be evidence of

24   exhaustion for the first claim against defendant Bainbridge.

25

26         [3] Exhibit E is a grievance plaintiff submitted on July 17, 2007, over two months before
     the alleged incidents in this case took place.

1    Having reviewed the record, the court concludes that plaintiff did not exhaust any

2    claim related to defendant Bainbridge's alleged use of excessive force on September 21, 2007.

3    Therefore that claim should be dismissed.

4         2.   Alleged incidents of October 16 and November 6, 2007

5         Plaintiff claims that defendant Bainbridge again used excessive force against him

6    on October 16, 2007.  He also claims that defendants Follosoco and Lipton used excessive force

7    on November 6, 2007.  According to the appeals tracking record attached to Clark's declaration,

8    three appeals were received within fifteen days of those incidents: one on October 16, one on

9    October 23, and one on November 15.   Neither party has submitted copies of those appeals.

10   Without more, the court cannot find that defendants have carried their burden on their argument

11   that plaintiff failed to exhaust these allegations of excessive force.  See Wyatt, supra.  Therefore

12   the court should deny the motion to dismiss as to those two claims and proceed to a summary

13   judgment analysis of them and the claim for deliberate indifference to a serious medical need.

14        III.   Defendants' motion for summary judgment

15        Summary judgment is appropriate when the movant demonstrates that there exists

16   "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

17   matter of law."  Fed. R. Civ. P. 56(c).

18        Under summary judgment practice, the moving party
          always bears the initial responsibility of informing the district court
19        of the basis for its motion, and identifying those portions of "the
          pleadings, depositions, answers to interrogatories, and admissions
20        on file, together with the affidavits, if any," which it believes
          demonstrate the absence of a genuine issue of material fact.

21

22   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

23   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

24   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

25   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

26   after adequate time for discovery and upon motion, against a party who fails to make a showing

7

1 sufficient to establish the existence of an element essential to that party's case, and on which that

2 party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

3 concerning an essential element of the nonmoving party's case necessarily renders all other facts

4 immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

5 whatever is before the district court demonstrates that the standard for entry of summary

6 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

7         If the moving party meets its initial responsibility, the burden then shifts to the

8 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

9 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

10 establish the existence of this factual dispute, the opposing party may not rely upon the

11 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

12 form of affidavits, and/or admissible discovery material, in support of its contention that the

13 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

14 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

15 of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

16 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

17 1987).  The opposing party must also demonstrate that the dispute is genuine, i.e., that the

18 evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool

19 v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

20         To establish the existence of a factual dispute, the opposing party need not

21 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

22 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

23 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

24 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

25 Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

26 amendments).

1          In resolving the summary judgment motion, the court examines the pleadings,

2   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

4   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

5   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

6   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

10  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

11  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

13        A.   Defendants' reliance on unanswered requests for admissions

14          Defendants' primary basis for summary judgment is plaintiff's failure to respond

15  to defendants' requests for admissions.  Generally, when a party fails to timely respond to

16  requests for admissions, those requests are automatically deemed admitted.  See Fed. R. Civ. P.

17  Rule 36(a).  "Any matter admitted under this rule is conclusively established unless the Court on

18  motion permits withdrawal or amendment of the admission."  Fed. R. Civ. P. Rule 36(a).

19  Although requests for admissions are governed by the same relevance standards set in Fed. R.

20  Civ. P. 26(b), such requests are not, strictly speaking, discovery devices, since they presuppose

21  that the propounding party knows or believes the facts sought and merely seeks a concession on

22  that fact from the other party.  See Workman v. Chinchinian, 807 F.Supp. 634, 647 (E.D. Wash.

23  1992) (Rule 26 relevance standards apply); Misco, Inc. v. United States Steel Corporation, 784

24  F.2d 198, 205 (6th Cir. 1986) (not a discovery device) (citing Wright & Miller, Federal Practice

25  and Procedure § 2254).  Because admissions are designed to limit factual issues in a case,

26          the requesting party bears the burden of setting forth its requests

9

> simply, directly, not vaguely or ambiguously, and in such a manner
> that they can be answered with a simple admit or deny without an
> explanation, and in certain instances, permit a qualification or
> explanation for purposes of clarification. . . . To facilitate clear and
> succinct responses, the facts stated in the request must be
> singularly, specifically, and carefully detailed.

Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003).  Moreover, requests

for admissions should not contain "compound, conjunctive, or disjunctive . . . statements."  U.S.

ex rel. England v. Los Angeles County, 235 F.R.D. 675, 684 (E.D. Cal. 2006).  However, "when

the purpose and significance of a request are reasonably clear, courts do not permit denials based

on an overly-technical reading of the request."  Id.  Finally, requests for admissions should not be

used to establish "facts which are obviously in dispute," Lakehead Pipe Line Co. v. American

Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997), to "demand that the other party admit

the truth of a legal conclusion," even if the conclusion is "attached to operative facts," or to ask

the party to admit facts of which he or she has no special knowledge.  Disability Rights Council

v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.C. Cir. 2006).

Defendant Bainbridge's requests ask plaintiff to admit: (1) he has no facts to

support his claim that Bainbridge violated his rights under the Eighth Amendment; (2)

Bainbridge did not violate any of plaintiff's constitutional rights; (3) Bainbridge did not subject

plaintiff to excessive force; and (4) plaintiff suffered no injury as a result of the defendant

Bainbridge's actions.  See Declaration of Matthew Wilson, Exhibit B (Docket No. 58-3.)  The

other defendants' requests for admissions are substantially the same or identical.  See id., Exs. A

and C.

These requests for admissions grossly violate the strictures that such requests not

seek to establish facts in obvious dispute and not demand the opposite party admit the truth of a

legal conclusion.  For that reason alone they are not effective concessions of any legal or factual

issue in this case, and the court will not accept them as a basis for summary judgment.

////

Defendants' reliance on requests for admission that, once unanswered, would translate into "deemed" concessions of plaintiff's entire case causes the court some concern, and not for the first time: the court notes that on at least two prior occasions, the law firm representing these defendants has filed motions for summary judgment principally on the basis of "deemed" admissions from a prisoner-plaintiff that he has no legal or factual basis for even bringing the lawsuit.  See Jefferson v. Perez, Civil Action No. 2:09-cv-3008 GEB CKD P; Kirk v. Richards, 2:10-cv-0373 GEB CKD P.  The court's analysis in Jefferson applies squarely here:

> Plaintiff's... timely opposition to the motion for summary judgment makes it apparent that he has no intention of abandoning his case.  It is less than apparent, however, that plaintiff appreciates the impact that deemed admissions could have on his claims.  At least one other court in this circuit, relying on Ninth Circuit case law, has asked whether some protection beyond a strict application of Rule 36 is appropriate for pro se prisoner plaintiffs:

> > In Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988), the Ninth Circuit held that a pro se prisoner is entitled to fair notice of the requirements to oppose summary judgment before granting summary judgment against the prisoner.  Likewise, this Court holds that pro se prisoners are entitled to notice that matters found in requests for admission will be deemed admitted unless responded to within 30 days after such requests have been served.  Without such notice, pro se prisoners will most likely not be aware that failure to respond to a request for admission would result in the admission of the matters contained in the request.  To hold otherwise would allow parties opposing pro se prisoner complaints to use Rule 36 procedures as a snare which prevents pro se prisoners from opposing summary judgment.  Even if the prisoner is notified of the requirements of the summary judgment rule as required by Eikenberry, the pro se prisoner may not be able to oppose summary judgment because all material facts will have been deemed admitted if the unwary prisoner fails to respond to a previous request for admission.

> > Therefore, before a matter may be deemed admitted against a pro se prisoner for failure to respond to a request, the request for admission should contain a notice advising the party to whom the request is made that, pursuant to Rule 36 of the Federal Rules

of Civil Procedure, the matters shall be deemed
admitted unless said request is responded to within
thirty (30) days after service of the request or within
such shorter or longer time as the court may allow.

Diggs v. Keller, 181 F.R.D. 468, 469 (D.Nev.1998).

When the court ordered [service of the complaint], it gave
plaintiff notice that failure to oppose a motion for summary
judgment could be construed as a waiver of the motion. ... No such
notice concerning the failure to answer requests for admission has
ever issued, however.  Nor did defendants inform plaintiff of the
effect of a "deemed" admission under Rule 36 (a)(3) when they
propounded their requests.  There is some inconsistency in
allowing "deemed" admissions to stand as the sole basis of
summary judgment against a pro se plaintiff without notice when
that plaintiff has heeded the notice not to let a motion for summary
judgment go unopposed.  The practice established by the District of
Nevada in Diggs is a sound one because, as the Diggs court put it,
"[e]ven if the prisoner is notified of the requirements of the
summary judgment rule as required by Eikenberry, the pro se
prisoner may not be able to oppose summary judgment because all
material facts will have been deemed admitted if the unwary
prisoner fails to respond to a previous request for admission."  Id.
That is the case here.

See Jefferson, Order at 2 (Docket No. 71) (footnote omitted).  This court published the above

discussion in Jefferson, and defense counsel is deemed to have received it, on October 7, 2011.[4]

The court recognizes that defendants filed the instant motion for summary

judgment before their counsel had the benefit of the court's treatment of the "deemed"

admissions in Jefferson and Kirk.  But several months have now passed since the court

announced its adoption of Diggs' notice requirement in Jefferson.  Insofar as defendants have

made no effort to re-open discovery for the limited purpose of giving plaintiff the notice the court

requires or otherwise amend the over-broad admissions that they must know the court will not

---

[4]  The relevant Kirk order issued even earlier, on September 19, 2011.  In that case, the
court found that "[t]he presentation of the merits of this action would not be subserved if
defendant were allowed to prevail on the matters deemed to be admitted under Rule 36."  Kirk,
Order at 4 (Docket No. 49).  The court did not have occasion to analyze the Diggs rationale as
thoroughly as it did in Jefferson, but it mentioned the notice requirement established by Diggs
and said "in the future, defendant might consider the wisdom of including that information."  Id.
at 5, n.1.  Counsel for the defendants in this case appear not to have heeded the suggestion.

1   accept, the court will exercise its discretion to give no effect to the supposedly "deemed"

2   admissions in deciding the motion for summary judgment.

3           B.   Plaintiff's claim of excessive force on October 16, 2007

4                   Plaintiff alleges that on October 16, 2007, Bainbridge searched him as he was

5   leaving the prison law library and, using excessive force, "forcefully squeezed" his buttocks and

6   testicles.  See First Amended Complaint, ¶ 43.

7                   Use of excessive force against an inmate violates the inmate's Eighth Amendment

8   right to be free from cruel unusual punishment.  Graham v. Connor, 490 U.S. 386, 393-94

9   (1989).  The use of force is constitutional if used to keep or restore order in the prison; it is

10  unconstitutional if used "maliciously or sadistically for the very purpose of causing harm."

11  Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  "That is not to say that every malevolent touch

12  by a prison guard gives rise to a federal cause of action.  The Eighth Amendment's prohibition of

13  'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis

14  uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience

15  of mankind.'"  Hudson v. McMillan, 501 U.S. 1, 9-10 (1992).  The Supreme Court has

16  identified five factors to consider in determining whether an official's use of force was sadistic

17  and malicious for the purpose of causing harm: (1) extent of the injury; (2) need to use the force;

18  (3) relationship between the need to use the force and the amount used; (4) the threat "reasonably

19  perceived" by the official; and (5) any efforts made to temper the severity of the force.  Id. at 7.

20  Although the extent of injury is relevant to the inquiry, the absence of serious injury "does not

21  end it."  Id.

22                  In support of summary judgment, defendant Bainbridge states under penalty of

23  perjury that he "ha[s] no recollection of any interaction with Jones on October 16, 2007."

24  Declaration of T. Bainbridge, ¶ 10 (Docket No. 58-7).  Bainbridge goes on to say that if he did

25  search plaintiff that day, he would have followed "my custom and habit [and] would not have

26  squeezed his buttocks or testicles."  Id.  Bainbridge says that if "anything unusual" had happened,

1   he would have "acted consistently with my custom and habit and documented it."  Id.  He

2   contends that the lack of any documented record of the incident means "no such event took

3   place."  Id.

4          Bainbridge's self-serving affidavit is by itself an insufficient basis for granting

5   summary judgment in his favor.  Although his sworn declaration is relevant to his defense, it is

6   not correct to argue, as he does, that plaintiff has no evidence of his own to survive summary

7   judgment.  In actions brought by a prisoner pro se, "[a] verified complaint may be used as an

8   opposing affidavit under Rule 56."  Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

9   Without more evidence, such as a deposition examination of the plaintiff, Bainbridge establishes

10  no more than a case of competing credibility between him and the plaintiff: the sworn statement

11  and the verified complaint together mean that it is Bainbridge's word against plaintiff's.

12  Bainbridge does not argue that the infliction of pain was de minimis, and the court is bound to

13  draw the reasonable inference that "forcefully squeezing" an inmate's testicles during an ordinary

14  search could constitute the wanton infliction of pain for the very purpose of causing harm.

15  Bainbridge has not carried his burden of showing there is no genuine issue of material fact on

16  this claim.  His motion for summary judgment on it should be denied.

17          C.   Plaintiff's claim of excessive force on November 6, 2007

18          Plaintiff claims that on November 6, 2007, he passed out in his cell and

19  awakened as he was "pulled out of [his] cell."  First Amended Complaint, ¶ 46.  He was taken to

20  the medical clinic, where he refused treatment and asked to return to his cell.  Id. at ¶ 47.  He

21  alleges that instead defendant Follosoco "maliciously and sadistically twisted and pried open

22  plaintiff's left arm and hand, and defendant Lipton maliciously and sadistically grabbed

23  plaintiff's left thumb and wantonly [and] repeatedly stuck plaintiff with a needle, causing him to

24  bleed."  Id.

25          Defendant Lipton states that she has no recollection of interacting with the

26  plaintiff on November 6, 2007.  See Declaration of C. Lipton, ¶ 4 (Docket No. 58-4).  Indeed the

1  evidence she attaches to her declaration suggests that she was not present when plaintiff was

2  brought to the clinic after he passed out.  Exhibit A to her affidavit is a medical record of the

3  examination signed by a Nurse Flaherty at the clinic.  Flaherty wrote that, during the exam,

4  plaintiff was "purposefully avoiding being helped."  Id. at 6.  A short time later, he was taken to a

5  triage area for further examination by a Nurse Holzmaier, and again he was uncooperative.  Id. at

6  7-8.  Neither nurse recorded any evidence or complaint of excessive force.

7          Plaintiff's evidence shows defendant Lipton's recollection is inaccurate.  He has

8  attached to his opposition a rules violation report reflecting disciplinary action taken against him

9  for "delaying a peace officer."  Opposition, Exhibit I at 41.  The document states that when

10 plaintiff was found lying on the floor of his cell and did not respond to any attempts to

11 communicate with him, "a medical emergency was declared....  Upon arrival at the D Facility

12 clinic, [plaintiff] refused medical examination by LVN Lipton."[5]  Id.  The prison's own record,

13 then, shows that Lipton was at the clinic and tried to examine the plaintiff.  Moreover, the medial

14 form signed by Nurse Flaherty shows that plaintiff was given a "fingerstick glucose" test.  That

15 detail is consistent with plaintiff's allegation that at the clinic defendant Follosoco "pried open"

16 his hand and defendant Lipton stuck his thumb with a needle, causing him to bleed.  First

17 Amended Complaint, ¶ 47.

18          Defendant Follosoco also declares under penalty of perjury that he has no

19 recollection of interacting with the plaintiff on November 6, 2007.  Unlike defendant Lipton's,

20 Follosoco's recollection is not contradicted by any documentation of the pass-out episode.  As

21 was the case with defendant Bainbridge, though, Follosoco's self-serving statement is not by

22 itself sufficient for summary judgment.  Plaintiff's verified complaint that Follosoco used force

23 to "pry open" his hand still stands as admissible evidence in opposition to the motion for

24 summary judgement.  See Schroeder, supra.  Therefore, based on the undisputed evidence

25

26     [5] The rules violation report goes on to say that the entire episode on November 6
    "involved over 20 staff members and delayed the program on D Facility for over one hour."

1  submitted by Lipton and the plaintiff, it appears that, contrary to defendant Lipton's faulty

2  recollection, she and a correctional officer used some measure of force to administer a blood

3  glucose test on plaintiff.  However, the evidence is equally clear that under the circumstances –

4  i.e., plaintiff found curled on the floor and unresponsive in his cell, causing prison staff to declare

5  a medical emergency and take him to the clinic – this was a reasonable use of force that caused

6  little injury, if any.  See Hudson, supra (instructing federal courts to consider the need for the use

7  of force in assessing an inmate's claim of excessive force).  The court finds there is no genuine

8  issue of material fact as to plaintiff's claim that Follosoco and Lipton used excessive force

9  against him on November 6, 2007.  The motion for summary judgment as to that claim should be

10  granted.

11       D.   Plaintiff's claim of deliberate indifference to a serious medical need

12            In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that

13  inadequate medical care does not constitute cruel and unusual punishment cognizable under 42

14  U.S.C. § 1983 unless the mistreatment rises to the level of "deliberate indifference to serious

15  medical needs."  The Ninth Circuit has developed a two-part test for deliberate indifference:

16            First, the plaintiff must show a serious medical need by
             demonstrating that failure to treat a prisoner's condition could
17           result in further significant injury or the "unnecessary and wanton
             infliction of pain."  Second, the plaintiff must show the defendant's
18           response to the need was deliberately indifferent.  This second
             prong – defendant's response to the need was deliberately
19           indifferent – is satisfied by showing (a) a purposeful act or failure
             to respond to a prisoner's pain or possible medical need and (b)
20           harm caused by the indifference. Indifference may appear when
             prison officials deny, delay or intentionally interfere with medical
21           treatment, or it may be shown by the way in which prison
             physicians provide medical care.

22

23  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations and quotations omitted);

24  see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992) (stating that "[a] defendant

25  must purposefully ignore or fail to respond to a prisoner's pain or possible medical need"),

26  overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th

1    Cir.1997).  There is no Eighth Amendment violation if any delay in treatment is not harmful.

2    Shapely v. Nevada Bd. of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir.1985).  However,

3    unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth

4    Amendment violation from delay in providing medical care.  McGuckin, 974 F.2d at 1062.

5         A showing of merely inadvertent or even negligent medical care is not enough to

6    establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124,

7    1130 (9th Cir.1998).  A difference of opinion about the proper course of treatment is not

8    deliberate indifference, nor does a dispute between a prisoner and prison officials over the

9    necessity for or extent of medical treatment amount to a constitutional violation. See, e.g.,

10   Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir.  2004); Sanchez v. Vild, 891 F.2d 240, 242

11   (9th Cir.1989).

12        A medical need is "serious" under the Eighth Amendment if failure to treat the

13   condition could cause further significant injury or the unnecessary and wanton infliction of pain.

14   McGuckin, 974 F.2d at 1059.

15            The existence of an injury that a reasonable doctor or patient would
              find important and worthy of comment or treatment; the presence
16            of a medical condition that significantly affects an individual's
              daily activities; or the existence of chronic and substantial pain are
17            examples of indications that a prisoner has a "serious" need for
              medical treatment

18

19   Id. at 1059-60.  The Ninth Circuit has also stated that "the fact that an individual sat idly by as

20   another human being was seriously injured despite the defendant's ability to prevent the injury is

21   a strong indicium of callousness and deliberate indifference to the prisoner's suffering." Id. at

22   1060.  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible

23   medical need in order for deliberate indifference to be established." Id. (emphasis added).

24        In his first amended complaint, plaintiff alleges that defendant Lipton happened to

25   be doing a "med pass" – that is, she was passing out medications to inmates – shortly after he

26   was allegedly assaulted by "several" correctional officers on September 13, 2007.  First

1   Amended Complaint, ¶ 31.  He states that other inmates told Lipton that plaintiff was in need of

2   medical attention.  Id.  He states that he complained to her of "severe chronic pain in his chest,

3   right arm and back" and showed her "abrasions and scrapes" from the alleged assault.  Id.  He

4   alleges that defendant Lipton "claimed she was going to come back and do a 7219 incident report

5   on plaintiff's injuries and give him medical care for them [but] then left and never came back."

6   Id.

7           Defendant Lipton states she has no recollection of speaking with Jones on

8   September 13, 2007.  Declaration of C. Lipton, ¶ 3.  She states that if Jones had told her he was

9   in pain or injured, she "would have acted consistently with my custom and habit and made a

10  written record of such a complaint."  Id.  She states she would have provided the appropriate

11  medical care "[d]epending on the severity of Jones' claimed injuries[.]"  Id.  She contends that the

12  absence of any written record of Jones complaining on September 13 means "no such complaints

13  were expressed to me."  Id.

14          As was the case with defendant Bainbridge's declaration that he does not

15  remember searching plaintiff, defendant Lipton's self-serving affidavit that she does not

16  remember seeing plaintiff on September 13, 2007, is relevant but not dispositive.  Plaintiff's

17  verified complaint sufficiently counter-weighs Lipton's affidavit for purposes of surviving

18  summary judgment if it contains allegations that, if accepted by a jury, would warrant recovery

19  for deliberate indifference to a serious medical need.  See Schroeder, supra.  The first amended

20  complaint alleges that plaintiff was in severe pain after an assault, that he told Nurse Lipton

21  about it and that she promised to return to administer medical care but never did.  Such

22  allegations meet the Ninth Circuit's requirement that "[a] defendant must purposefully ignore or

23  fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to

24  be established."  McGuckin, 974 F.2d at 1060 (emphasis added).

25  ////

26  ////

1    Defendant Lipton also argues that the record of plaintiff's conduct on September

2  13 demonstrates that he suffered no serious medical need that day.  According to a rules violation

3  report lodged against plaintiff, a prison guard came to retrieve plaintiff's food tray through the

4  food port at plaintiff's cell on September 13 and accidentally dropped the tray onto the cell floor.

5  When plaintiff refused to return the tray and eventually had to be confronted by a sergeant and

6  another guard, plaintiff was charged with delaying a peace officer.  See Declaration of C. Scholl

7  at 4 (Docket No. 58-6).  Plaintiff contends that he was assaulted with the tray, an allegation

8  belied by the disciplinary record.  However, the descriptions of plaintiff's conduct in the rules

9  violation report and at the subsequent disciplinary hearing do not conclusively rule out the

10  inference in the first amended complaint that the dropped-tray incident escalated into a

11  confrontation, nor does it contradict the key, explicit allegation that plaintiff was injured or in

12  pain after an altercation with correctional officers some time before he saw defendant Lipton on

13  September 13.  His verified complaint therefore still stands as admissible Rule 56 evidence

14  sufficient to survive summary judgment.

15    Without more evidence, the court is left with a credibility contest between

16  plaintiff and defendant Lipton that can only be resolved at trial.  The motion for summary

17  judgment as to plaintiff's claim for deliberate indifference to a serious medical need should be

18  denied.

19    E.  Qualified immunity

20    Finally, defendants argue they are entitled to qualified immunity against all

21  claims.

22    Government officials performing discretionary functions generally are shielded

23  from liability for civil damages insofar as their conduct does not violate clearly established

24  statutory or constitutional rights of which a reasonable person would have known.  Harlow v.

25  Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune

26  from suit based on the doctrine of qualified immunity, the court considers two questions.  One is,

1  taken in the light most favorable to the party asserting the injury, do the facts alleged show the

2  officer's conduct violated a constitutional right?  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A

3  negative answer ends the analysis, with qualified immunity protecting defendant from liability.

4  Id.  If a constitutional violation occurred, the court further inquires "whether the right was clearly

5  established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be

6  clearly unlawful, summary judgment based on qualified immunity is appropriate."  Id. at 202.

7  The inquiry into whether a right was clearly established "must be taken in light of the specific

8  context of the case, not as a broad general proposition."  Id. at 201.  "[T]he right the official is

9  alleged to have violated must have been 'clearly established' in a more particularized, and hence

10  more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

11  official would understand that what he is doing violates that right."  Anderson v. Creighton, 483

12  U.S. 635, 640 (1987).

13         The district court may decide the order of addressing the two prongs of its

14  qualified immunity analysis in accordance with fairness and efficiency and in light of the

15  circumstances of a particular case.  Pearson v. Callahan, 555 U.S. 223 (2009).  Given the

16  particular circumstances of this case, this court sees no reason to depart from the traditional order

17  of analysis presented in Saucier.

18         There is no question that the facts alleged establish the violation of a

19  constitutional right in each claim and that those rights were clearly established at the time they

20  were allegedly violated.  The Supreme Court has long held that the wanton infliction of pain,

21  which plaintiff alleges against defendant Bainbridge, and deliberate indifference to a serious

22  medical need, which plaintiff alleges against defendant Lipton, violate the Eighth Amendment.

23  See Hudson and Estelle, supra.  The factual circumstances alleged do not take either claim out of

24  those established lines of constitutional law.  Defendants are not entitled to qualified immunity.

25  ////

26  ////

1        Accordingly, IT IS RECOMMENDED that:

2        1.   The motion to dismiss (Docket No. 57) be granted in part and denied in part.

3  It should be granted as to plaintiff's claim defendant Bainbridge used excessive force against him

4  on September 21, 2007.  It should be denied as to his claim that Bainbridge used excessive force

5  on October 16, 2007.  It should also be denied as to the claim that defendants Follosoco and

6  Lipton used excessive force on November 6, 2007.

7        2.   The motion for summary judgment (Docket No. 58) be granted in part and

8  denied in part.  It should be granted as to plaintiff's claim that defendants Follosoco and Lipton

9  used excessive force against him on November 6, 2007.  It should be denied as to the claim that

10  defendant Bainbridge used excessive force on October 16, 2007.  The motion should also be

11  denied as to the claim that defendant Lipton was deliberately indifferent to a serious medical

12  need on September 13, 2007.

13        These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

15  one days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18  shall be served and filed within fourteen days after service of the objections.  The parties are

19  advised that failure to file objections within the specified time may waive the right to appeal the

20  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21  Dated: February 8, 2012

22

23                                 CAROLYN K. DELANEY

                                   UNITED STATES MAGISTRATE JUDGE

24

25

26  <sub></sub>3
  jone2607.57