1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MALIK JONES

11          Plaintiff,                   No. 2:08-cv-2607 MCE CKD P

12      vs.

13   J. MCGUIRE, et al.                  ORDER AND

14          Defendant.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   under 42 U.S.C. § 1983.  His first amended complaint alleges defendants Bainbridge, Follosoco

18   and Lipton used excessive force against him while he was an inmate at High Desert State Prison

19   (HDSP) and that Lipton was deliberately indifferent to a serious medical need, all in violation of

20   the Eighth Amendment.[1]  The defendants have filed a motion to dismiss the excessive force

21   _____

22          [1] Bainbridge, Follosoco and Lipton are defendants pursuant to the court's screening order
     of May 19, 2010.  Plaintiff recently filed a motion for clarification, in which he asks whether
23   other defendants named in the first amended complaint have been excluded from the case
     "inadvertently."  They have not been excluded inadvertently: rather, as stated in the screening
24   order of May 19, 2010, the first amended complaint fails to state a claim against them.  (The first
     amended complaint superceded the original complaint.  The court's screening of the amended
25   complaint likewise superceded the order screening the original complaint.)  To the extent
     plaintiff disagrees with the exclusion of those defendants, his challenge to the screening order of
26   May 19, 2010, is very late and, therefore, moot.

                                            1

1   claims for failure to exhaust administrative remedies.  They have also filed a motion for summary

2   judgment.  Both motions have been fully briefed.

3       I.   Plaintiff's allegations

4           Plaintiff alleges three instances of excessive force.  First, he states that on

5   September 21, 2007, defendant Bainbridge used excessive force in handcuffing plaintiff, who

6   was at the time in a wheelchair and already suffering from an injured right arm.  See First

7   Amended Complaint, ¶¶ 33-34 (Docket No. 32).  Second, he alleges that on October 16, 2007,

8   Bainbridge searched him as he was leaving the prison law library and, using excessive force,

9   squeezed his buttocks and testicles.  Id. at ¶ 43.  Third, plaintiff alleges that on November 6,

10  2007, he "blacked out" in his cell.  Id. at ¶ 46.  He states that he regained consciousness as he

11  was being taken to the prison medical clinic, where he refused medical treatment and asked to be

12  allowed to return to his cell.  Id. at ¶ 47.  Instead, defendant Follosoco allegedly "maliciously and

13  sadistically twisted and pried open plaintiff's left arm and hand, and defendant Lipton

14  maliciously and sadistically grabbed plaintiff's left thumb and wantonly [and] repeatedly stuck

15  plaintiff with a needle, causing him to bleed."  Id.

16          The first amended complaint also alleges deliberate indifference to a serious

17  medical need against defendant Lipton, a nurse at HDSP.  It states that on September 13, 2007,

18  plaintiff was assaulted in his cell by several prison guards, leaving him with "severe chronic pain

19  in his chest, right arm and back."  Id. at ¶¶ 30-31.  Later, still in his cell, plaintiff allegedly told

20  Lipton he was in pain and "show[ed] defendant Lipton abrasions and scrapes.... Lipton claimed

21  she was going to come back and do [an] incident report on plaintiff's injuries and give him

22  medical care for them.  Then [she] left and never came back."  Id. at ¶ 31.

23      II.   Procedural background

24          On February 9, 2012, the undersigned entered findings and recommendations on

25  the issues presented in defendants' motion to dismiss and motion for summary judgment.  The

26  undersigned rejected defendants' argument that plaintiff had failed to exhaust his claims that he

1   was subjected to excessive force on October 16, 2007, and November 6, 2007, explaining:

2           Plaintiff claims that defendant Bainbridge again used
3   excessive force against him on October 16, 2007.  He also claims
    that defendants Follosoco and Lipton used excessive force on
    November 6, 2007.  According to the appeals tracking record
4   [submitted by defendants], three appeals were received within
    fifteen days of those incidents: one on October 16, one on October
5   23, and one on November 15.   Neither party has submitted copies
    of those appeals.  Without more, the court cannot find that
6   defendants have carried their burden on their argument that
    plaintiff failed to exhaust these allegations of excessive force.  See
7   Wyatt, supra.  Therefore the court should deny the motion to
    dismiss as to those two claims and proceed to a summary judgment
8   analysis of them and the claim for deliberate indifference to a
    serious medical need.

9

10  Vacated Findings and Recommendations at 7 (Docket No. 71).[2]  The undersigned went on to

11  recommend that the motion for summary judgment be granted as to the claim arising on

12  November 6, 2007, but denied as to the claims arising on October 16, 2007.

13          Defendants filed their objections to the findings and recommendations on

14  February 29, 2012.  In that filing, they submitted for the first time the documentary evidence of

15  plaintiff's history of administrative grievances that had been lacking to support their motion to

16  dismiss for failure to exhaust.  The court vacated the findings and recommendations and required

17  defendants' counsel to show cause why sanctions should not be entered for unnecessary delay

18  caused by withholding documentary evidence that could have proven the case for dismissal.  The

19  order to show cause was ultimately discharged without the imposition of sanctions, but the

20  court's acceptance of the tardily submitted exhaustion documents required it to reconsider the

21  motion to dismiss.  Plaintiff filed his objections to the "new" exhaustion documents on March

22  12, 2012.  The court is now ready to rule on the motion to dismiss in light of the revised record,

23  and on the still-pending motion for summary judgment.

24  ////

25  _____

26          [2] The court references the page numbers assigned by the court's CM/ECF system, where
    applicable.

3

1    III.    Exhaustion of plaintiff's claims

2        The defendants argue that plaintiff did not submit any of his three allegations of

3   excessive force to the grievance process at HDSP, thus leaving those claims unexhausted and

4   subject to dismissal.  Defendants do not include the allegation of inadequate medical care against

5   Lipton as a subject of their motion to dismiss.  See Motion at 1 n.1 (Docket No. 57).

6        A motion to dismiss for failure to exhaust administrative remedies prior to filing

7   suit arises under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d

8   1108, 1119 (9th Cir. 2003).  In deciding a motion to dismiss for failure to exhaust non-judicial

9   remedies, the court may look beyond the pleadings and decide disputed issues of fact.  Id. at

10  1120.  If the district court concludes that the prisoner has not exhausted non-judicial remedies,

11  the proper remedy is dismissal of the claim without prejudice.  Id.

12       The exhaustion requirement is rooted in the Prison Litigation Reform Act

13  (PLRA), which provides that "[n]o action shall be brought with respect to prison conditions

14  under section 1983 of this title, . . . until such administrative remedies as are available are

15  exhausted."  42 U.S.C. § 1997e(a).  The California Department of Corrections and

16  Rehabilitation's (CDCR) regulations provide administrative procedures in the form of one

17  informal and three formal levels of review to address plaintiff's claims.  See Cal. Code Regs.

18  tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once a prisoner has

19  received a "Director's Level Decision," or third level review, with respect to his issues or claims.

20  Cal. Code Regs. tit. 15, § 3084.5.

21       Under CDCR regulations, an inmate must file his prisoner grievance within

22  fifteen days of the events grieved.[3]  If a plaintiff failed to exhaust available administrative

23

24        [3] California regulations do not require an inmate to specifically identify a prison official
in a grievance.  Therefore an inmate need not name a particular individual during the grievance
25  process in order to name that person as a defendant and meet the PLRA's exhaustion requirement
when he files suit.  See Jones v. Bock, 549 U.S. 199, 218-219 (2007); Butler v. Adams, 397 F.3d
26  1181, 1183 (9th Cir. 2005).

4

1  remedies by filing a late grievance, his case must be dismissed.  Woodford v. Ngo, 548 U.S. 81

2  (2006).  Exhaustion during the pendency of the litigation will not save an action from dismissal.

3  McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).  Exhaustion "'means using all steps

4  that the agency holds out, and doing so properly....'"  Woodford, 548 U.S. at 90 (citation

5  omitted).   Therefore, an inmate must pursue a grievance through every stage of the prison's

6  administrative process before a civil rights action is filed, unless he can demonstrate a step was

7  not available to him.

8          The term "available" in prisoners' civil rights cases stems directly from the

9  PLRA, which bars an action "until such administrative remedies as are available are exhausted."

10  42 U.S.C. § 1997e(a).  The Ninth Circuit has held that a prisoner has met the "availability"

11  requirement if the prisoner attempted to complete the grievance process but was precluded by a

12  prison official's mistake.  See Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010).  The

13  reasoning in such cases is the prison official's action (or inaction) effectively rendered further

14  exhaustion unavailable under the PLRA.  Other circuit courts have held that a prisoner has

15  satisfied the exhaustion requirement if prison officials prevent exhaustion through their own

16  misconduct or fail to respond to a grievance within the applicable time limits.  There too, courts

17  have applied the "availability" requirement of the PLRA.  See, e.g., Kaba v. Stepp, 458 F.3d 678,

18  684 (7th Cir. 2006) (administrative remedy not available if prison employees do not respond to a

19  properly filed grievance or use affirmative misconduct to obstruct exhaustion).

20          Defendants bear the burden of proving plaintiff's failure to exhaust.  Wyatt, 315

21  F.3d at 1119.  The court resolves all ambiguities in favor of the non-moving party.  Estelle v.

22  Gamble, 429 U.S. 97, 106 (1976).

23      A.  Exhaustion analysis

24          The defendants' principal evidence that plaintiff failed to exhaust any of his

25  allegations of excessive force is a sworn declaration by D. Clark, Appeals Coordinator for CDCR

26  at High Desert State Prison.  Clark concludes that, based on his review of HDSP's appeals

1  records, "there is no record of any appeal being accepted for review from Jones in September

2  2007 through January 2008 concerning such allegations."  Declaration of D. Clark, ¶ 5 (Docket

3  No. 57-4).  The Clark declaration includes "printout of the records from the Inmate Appeals

4  Tracking System concerning Jones' inmate appeals at HDSP" as an exhibit.  Id. at ¶ 7.  The

5  printout gives the date, log number and generic "issue" (e.g., "staff complaint" or "medical")

6  averred in an inmate's grievance.  The specific factual allegations of a particular grievance

7  cannot be ascertained from the tracking system's record.  See id., Ex. A.

8         In all, Clark summarizes the contents of seven appeals filed from September 2007

9  to January 2008, thus going well past the fifteen-day limitations period for each of plaintiff's

10  allegations of excessive force.

11         1.  Alleged incident of September 21, 2007

12         Clark's affidavit states plaintiff filed two staff complaints around the time

13  defendant Bainbridge allegedly used excessive force against plaintiff on September 21, 2007.

14  One grievance was received that same day, but Clark asserts that it dealt with an event that

15  happened on September 13.  He states another grievance was received on October 4, but he says

16  it concerned plaintiff's allegation that a non-party officer aimed a loaded rifle at him without

17  cause.  The defendants do not support their argument with just the Clark declaration, however.

18  They acknowledge that plaintiff attached two grievances to the original complaint, marked

19  Exhibits "D" and "E."  Only Exhibit D is potentially relevant here.[4]  It is an administrative appeal

20  plaintiff submitted September 30, 2007, nine days after defendant Bainbridge allegedly used

21  excessive force on plaintiff.  Plaintiff's principal complaint in that appeal is directed at an Officer

22  Vincent, the guard who allegedly aimed a loaded rifle at plaintiff, an incident that is not a subject

23  of this case.  However, the grievance form also contains a more general reference to plaintiff's

24  "fear that... officers will... come in [the] cell and assault me again."  Original Complaint, Exhibit

25  _____

26         [4] Exhibit E is a grievance plaintiff submitted on July 17, 2007, over two months before
   the alleged incidents in this case took place.

6

D at 48 (Docket No. 1).

According to Estelle, supra, the ambiguity raised by this reference to prior assaults by officers should be resolved in plaintiff's favor in determining whether he exhausted his allegation that defendant Bainbridge used excessive force on September 21.  However, even giving plaintiff that benefit of the doubt, it is clear that plaintiff focused solely on his allegation against Officer Vincent through the remaining stages of the appeals process.  His appeals of the decisions at the first and second appellate levels do not mention anything that could be construed as a complaint about defendant Bainbridge's conduct on September 21.  See id. at 49.  Even if he was referring to defendant Bainbridge at the beginning of this particular grievance, then, he abandoned that part of his complaint in the last two stages of his appeal.

The only remaining appeal that could plausibly demonstrate exhaustion of the September 21 incident is the grievance assigned as Log No. HDSP-D-07-03212, which was received at the first formal level of review on the same day.  Plaintiff provided a copy of that appeal as Exhibit A to his opposition to the motion for summary judgment, and it demonstrates that plaintiff submitted Log No. HDSP-D-07-03212 on September 16, 2007.  See Plaintiff's Opp'n to Summary Judgment, Exhibit A at 15 (Docket No. 61).  That date precedes the alleged incident of September 21, so it cannot be evidence of exhaustion for the first claim against defendant Bainbridge.

Having reviewed the record, the court concludes that plaintiff did not exhaust any claim related to defendant Bainbridge's alleged use of excessive force on September 21, 2007.  Therefore that claim should be dismissed.

2.  Alleged incidents of October 16 and November 6, 2007

Plaintiff claims that defendant Bainbridge again used excessive force against him on October 16, 2007.  He also claims that defendants Follosoco and Lipton used excessive force on November 6, 2007.  According to the appeals tracking record attached to Clark's declaration, three appeals were received within fifteen days of those incidents: one on October 16, one on

1   October 23, and one on November 15.  The defendants have now submitted the administrative

2   documents related to each of those grievance (see the discussion at Section II, supra), and they

3   show that plaintiff never raised either allegation of excessive force in any of them.  All three

4   grievances are wholly unrelated to any claim now before the court.  The tracking record and the

5   content of these three grievances together demonstrate that plaintiff failed to exhaust his claims

6   of excessive force arising on October 16 and November 6, 2007.  Moreover, plaintiff's objection

7   that he was denied access to the grievance process in attempting to complain about these alleged

8   incidents is completely without documentary support.  Therefore, the court should grant the

9   motion to dismiss as to both claims, for plaintiff's failure to exhaust.

10         IV.    Defendants' motion for summary judgment

11         Defendants do not contend that the claim against defendant Lipton is unexhausted.

12   Instead, they argue it is ripe for summary judgment.  Summary judgment is appropriate when the

13   movant demonstrates that there exists "no genuine issue as to any material fact and that the

14   moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

15              Under summary judgment practice, the moving party
                always bears the initial responsibility of informing the district court
16              of the basis for its motion, and identifying those portions of "the
                pleadings, depositions, answers to interrogatories, and admissions
17              on file, together with the affidavits, if any," which it believes
                demonstrate the absence of a genuine issue of material fact.

18

19   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

20   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

21   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

22   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

23   after adequate time for discovery and upon motion, against a party who fails to make a showing

24   sufficient to establish the existence of an element essential to that party's case, and on which that

25   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

26   concerning an essential element of the nonmoving party's case necessarily renders all other facts

8

1    immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as

2    whatever is before the district court demonstrates that the standard for entry of summary

3    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

4              If the moving party meets its initial responsibility, the burden then shifts to the

5    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

6    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

7    establish the existence of this factual dispute, the opposing party may not rely upon the

8    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

9    form of affidavits, and/or admissible discovery material, in support of its contention that the

10   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

11   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

12   of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

13   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

14   1987).  The opposing party must also demonstrate that the dispute is genuine, i.e., that the

15   evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool

16   v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

17             To establish the existence of a factual dispute, the opposing party need not

18   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

19   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

20   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

21   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

22   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

23   amendments).

24             In resolving the summary judgment motion, the court examines the pleadings,

25   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

26   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

1  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

2  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

3  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

4  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

5  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

6  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

7  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

8  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

9  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

10       A.   Defendants' reliance on unanswered requests for admissions

11               Defendant Lipton's primary basis for summary judgment is plaintiff's failure to

12  respond to defendants' requests for admissions.  Generally, when a party fails to timely respond

13  to requests for admissions, those requests are automatically deemed admitted.  See Fed. R. Civ.

14  P. Rule 36(a).  "Any matter admitted under this rule is conclusively established unless the Court

15  on motion permits withdrawal or amendment of the admission."  Fed. R. Civ. P. Rule 36(a).

16  Although requests for admissions are governed by the same relevance standards set in Fed. R.

17  Civ. P. 26(b), such requests are not, strictly speaking, discovery devices, since they presuppose

18  that the propounding party knows or believes the facts sought and merely seeks a concession on

19  that fact from the other party.  See Workman v. Chinchinian, 807 F.Supp. 634, 647 (E.D. Wash.

20  1992) (Rule 26 relevance standards apply); Misco, Inc. v. United States Steel Corporation, 784

21  F.2d 198, 205 (6th Cir. 1986) (not a discovery device) (citing Wright & Miller, Federal Practice

22  and Procedure § 2254).  Because admissions are designed to limit factual issues in a case,

23              the requesting party bears the burden of setting forth its requests
            simply, directly, not vaguely or ambiguously, and in such a manner

24          that they can be answered with a simple admit or deny without an
            explanation, and in certain instances, permit a qualification or

25          explanation for purposes of clarification. . . . To facilitate clear and
            succinct responses, the facts stated in the request must be

26          singularly, specifically, and carefully detailed.

1  Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003).  Moreover, requests

2  for admissions should not contain "compound, conjunctive, or disjunctive . . . statements."  U.S.

3  ex rel. England v. Los Angeles County, 235 F.R.D. 675, 684 (E.D. Cal. 2006).  However, "when

4  the purpose and significance of a request are reasonably clear, courts do not permit denials based

5  on an overly-technical reading of the request."  Id.  Finally, requests for admissions should not be

6  used to establish "facts which are obviously in dispute," Lakehead Pipe Line Co. v. American

7  Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997), to "demand that the other party admit

8  the truth of a legal conclusion," even if the conclusion is "attached to operative facts," or to ask

9  the party to admit facts of which he or she has no special knowledge.  Disability Rights Council

10  v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.C. Cir. 2006).

11         Defendant Lipton's requests ask plaintiff to admit: (1) he has no facts to support

12  his claim that Lipton violated his rights under the Eighth Amendment; (2) Lipton did not violate

13  any of plaintiff's constitutional rights; (3) Lipton did not subject plaintiff to excessive force; (4)

14  plaintiff suffered no injury as a result of the defendant Lipton's actions; and (5) Lipton was not

15  deliberately indifferent to plaintiff's medical needs.  See Declaration of Matthew Wilson, Exhibit

16  A (Docket No. 58-3).[5]

17         These requests for admissions grossly violate the strictures that such requests not

18  seek to establish facts in obvious dispute and not demand the opposite party admit the truth of a

19  legal conclusion.  For that reason alone they are not effective concessions of any legal or factual

20  issue in this case, and the court will not accept them as a basis for summary judgment.

21         Lipton's reliance on requests for admission that, once unanswered, would

22  translate into "deemed" concessions of plaintiff's entire case causes the court some concern, and

23  not for the first time: the court notes that on at least two prior occasions, the law firm

24

25         [5] The other defendants' requests for admissions are substantially the same or identical, but
   the court's finding that plaintiff failed to exhaust his claims against the other defendants removes
26  these requests from relevant consideration now.  See id., Exs. B and C.

representing these defendants has filed motions for summary judgment principally on the basis of "deemed" admissions from a prisoner-plaintiff that he has no legal or factual basis for even bringing the lawsuit.  See Jefferson v. Perez, Civil Action No. 2:09-cv-3008 GEB CKD P; Kirk v. Richards, 2:10-cv-0373 GEB CKD P.  The court's analysis in Jefferson applies squarely here:

> Plaintiff's... timely opposition to the motion for summary judgment makes it apparent that he has no intention of abandoning his case.  It is less than apparent, however, that plaintiff appreciates the impact that deemed admissions could have on his claims.  At least one other court in this circuit, relying on Ninth Circuit case law, has asked whether some protection beyond a strict application of Rule 36 is appropriate for pro se prisoner plaintiffs:

> In Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988), the Ninth Circuit held that a pro se prisoner is entitled to fair notice of the requirements to oppose summary judgment before granting summary judgment against the prisoner.  Likewise, this Court holds that pro se prisoners are entitled to notice that matters found in requests for admission will be deemed admitted unless responded to within 30 days after such requests have been served.  Without such notice, pro se prisoners will most likely not be aware that failure to respond to a request for admission would result in the admission of the matters contained in the request.  To hold otherwise would allow parties opposing pro se prisoner complaints to use Rule 36 procedures as a snare which prevents pro se prisoners from opposing summary judgment.  Even if the prisoner is notified of the requirements of the summary judgment rule as required by Eikenberry, the pro se prisoner may not be able to oppose summary judgment because all material facts will have been deemed admitted if the unwary prisoner fails to respond to a previous request for admission.

> Therefore, before a matter may be deemed admitted against a pro se prisoner for failure to respond to a request, the request for admission should contain a notice advising the party to whom the request is made that, pursuant to Rule 36 of the Federal Rules of Civil Procedure, the matters shall be deemed admitted unless said request is responded to within thirty (30) days after service of the request or within such shorter or longer time as the court may allow.

> Diggs v. Keller, 181 F.R.D. 468, 469 (D.Nev.1998).

When the court ordered [service of the complaint], it gave plaintiff notice that failure to oppose a motion for summary judgment could be construed as a waiver of the motion. ...  No such notice concerning the failure to answer requests for admission has ever issued, however.  Nor did defendants inform plaintiff of the effect of a "deemed" admission under Rule 36 (a)(3) when they propounded their requests.  There is some inconsistency in allowing "deemed" admissions to stand as the sole basis of summary judgment against a pro se plaintiff without notice when that plaintiff has heeded the notice not to let a motion for summary judgment go unopposed.  The practice established by the District of Nevada in Diggs is a sound one because, as the Diggs court put it, "[e]ven if the prisoner is notified of the requirements of the summary judgment rule as required by Eikenberry, the pro se prisoner may not be able to oppose summary judgment because all material facts will have been deemed admitted if the unwary prisoner fails to respond to a previous request for admission."  Id. That is the case here.

See Jefferson, Order at 2 (Docket No. 71) (footnote omitted).  This court published the above discussion in Jefferson, and defense counsel is deemed to have received it, on October 7, 2011.[6]

The court recognizes that Lipton filed the instant motion for summary judgment before her counsel had the benefit of the court's treatment of the "deemed" admissions in Jefferson and Kirk.  But months have passed since the court announced its adoption of Diggs' notice requirement in Jefferson.  Insofar as Lipton has made no effort to re-open discovery for the limited purpose of giving plaintiff the notice the court requires or otherwise amend the over-broad admissions that they must know the court will not accept, the court will exercise its discretion to give no effect to the supposedly "deemed" admissions in deciding the motion for summary judgment.[7]

_____

[6]  The relevant Kirk order issued even earlier, on September 19, 2011.  In that case, the court found that "[t]he presentation of the merits of this action would not be subserved if defendant were allowed to prevail on the matters deemed to be admitted under Rule 36."  Kirk, Order at 4 (Docket No. 49).  The court did not have occasion analyze the Diggs rationale as thoroughly as it did in Jefferson, but it mentioned the notice requirement established by Diggs and said "in the future, defendant might consider the wisdom of including that information."  Id. at 5, n.1.  Counsel for the defendants in this case appear not to have heeded the suggestion.

[7]  Indeed, the court announced its intention to disregard the "deemed" admissions in the now-vacated Findings and Recommendations entered on February 9, 2012. Dkt. 71 at 13.

B.  Plaintiff's claim of deliberate indifference to a serious medical need

In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that inadequate medical care does not constitute cruel and unusual punishment cognizable under 42 U.S.C. § 1983 unless the mistreatment rises to the level of "deliberate indifference to serious medical needs."  The Ninth Circuit has developed a two-part test for deliberate indifference:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  This second prong – defendant's response to the need was deliberately indifferent – is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Jett v.  Penner, 439 F.3d 1091, 1096 (9th Cir.  2006) (internal citations and quotations omitted); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992) (stating that "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need"), overruled in part on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997).  There is no Eighth Amendment violation if any delay in treatment is not harmful. Shapely v.  Nevada Bd. of State Prison Com'rs., 766 F.2d 404, 407 (9th Cir.1985).  However, unnecessary continuation of pain may constitute the "harm" necessary to establish an Eighth Amendment violation from delay in providing medical care.  McGuckin, 974 F.2d at 1062.

A showing of merely inadvertent or even negligent medical care is not enough to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998).  A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir.  2004); Sanchez v. Vild, 891 F.2d 240, 242

1  (9th Cir.1989).

2        A medical need is "serious" under the Eighth Amendment if failure to treat the

3  condition could cause further significant injury or the unnecessary and wanton infliction of pain.

4  <u>McGuckin</u>, 974 F.2d at 1059.

5        The existence of an injury that a reasonable doctor or patient would
        find important and worthy of comment or treatment; the presence
6        of a medical condition that significantly affects an individual's
        daily activities; or the existence of chronic and substantial pain are
7        examples of indications that a prisoner has a "serious" need for
        medical treatment.

8

9  <u>Id</u>. at 1059-60.  The Ninth Circuit has also stated that "the fact that an individual sat idly by as

10 another human being was seriously injured despite the defendant's ability to prevent the injury is

11 a strong indicium of callousness and deliberate indifference to the prisoner's suffering."  <u>Id.</u> at

12 1060.  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or <u>possible</u>

13 medical need in order for deliberate indifference to be established."  <u>Id.</u> (emphasis added).

14       Plaintiff alleges that defendant Lipton happened to be doing a "med pass" – that

15 is, she was passing out medications to inmates – shortly after he was assaulted by "several"

16 correctional officers on September 13, 2007.  First Amended Complaint, ¶ 31.  He states that

17 other inmates told Lipton that plaintiff was in need of medical attention.  <u>Id.</u>  He states that he

18 complained to her of "severe chronic pain in his chest, right arm and back" and showed her

19 "abrasions and scrapes" from the alleged assault.  <u>Id.</u>  He alleges that defendant Lipton "claimed

20 she was going to come back and do a 7219 incident report on plaintiff's injuries and give him

21 medical care for them [but] then left and never came back."  <u>Id.</u>  Taken as true, these allegations

22 comprise a claim for deliberate indifference to a serious medical need.  The question at this stage,

23 of course, is whether there is any evidence to support the claim.

24       Defendant Lipton states she has no recollection of speaking with Jones on

25 September 13, 2007.  Declaration of C. Lipton, ¶ 3.  She states that if Jones had told her he was

26 in pain or injured, she "would have acted consistently with my custom and habit and made a

1   written record of such a complaint." <u>Id.</u>  She states she would have provided the appropriate

2   medical care "[d]epending on the severity of Jones' claimed injuries[.]" <u>Id.</u>  She contends that the

3   absence of any written record of Jones complaining on September 13 means "no such complaints

4   were expressed to me." <u>Id.</u>

5            Defendant Lipton's affidavit that she does not remember seeing plaintiff on

6   September 13, 2007, is relevant but not dispositive.  Although her sworn declaration is relevant

7   to her defense, it is not correct to argue, as she does, that plaintiff has no evidence of his own to

8   survive summary judgment.  In actions brought by a prisoner pro se, "[a] verified complaint may

9   be used as an opposing affidavit under Rule 56." <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 (9th

10   Cir. 1995).  The first amended complaint alleges that plaintiff was in severe pain after an assault,

11   that he told Nurse Lipton about it and that she promised to return to administer medical care but

12   never did.  Such allegations meet the Ninth Circuit's requirement that "[a] defendant must

13   purposefully ignore or fail to respond to a prisoner's pain or <u>possible</u> medical need in order for

14   deliberate indifference to be established." <u>McGuckin</u>, 974 F.2d at 1060 (emphasis added).  The

15   complaint therefore sufficiently counter-weighs Lipton's affidavit for purposes of surviving

16   summary judgment because it contains allegations that, if accepted by a jury, would warrant

17   recovery for deliberate indifference to a serious medical need.  Without other admissible

18   evidence Lipton establishes no more than a case of competing credibility between her and the

19   plaintiff: the sworn statement and the verified complaint together mean that it is Lipton's word

20   against plaintiff's.  In such a circumstance, summary judgment cannot be granted.

21            Defendant Lipton also argues that the record of plaintiff's conduct on September

22   13 demonstrates that he suffered no serious medical need that day.  According to a rules violation

23   report lodged against plaintiff, a prison guard came to retrieve plaintiff's food tray through the

24   food port at plaintiff's cell on September 13 and accidentally dropped the tray onto the cell floor.

25   When plaintiff refused to return the tray and eventually had to be confronted by a sergeant and

26   another guard, plaintiff was charged with delaying a peace officer.  <u>See</u> Declaration of C. Scholl

1   at 4 (Docket No. 58-6).  Plaintiff contends that he was assaulted with the tray, an allegation

2   belied by the disciplinary record.  However, the descriptions of plaintiff's conduct in the rules

3   violation report and at the subsequent disciplinary hearing do not conclusively rule out the

4   inference in the first amended complaint that the dropped-tray incident escalated into a

5   confrontation, nor does it contradict the key, explicit allegation that plaintiff was injured or in

6   pain after an altercation with correctional officers some time before he saw defendant Lipton on

7   September 13.  His verified complaint therefore still stands as admissible Rule 56 evidence

8   sufficient to survive summary judgment.

9          Without more evidence, the court is left with a credibility contest between

10  plaintiff and defendant Lipton that can only be resolved at trial.  The motion for summary

11  judgment as to plaintiff's claim for deliberate indifference to a serious medical need should be

12  denied.

13         C.  Qualified immunity

14         Finally, defendants argue they are entitled to qualified immunity against all

15  claims.  In light of the court's finding that all claims are unexhausted except the claim against

16  Lipton, the court will take up the question of qualified immunity only as to her.

17         Government officials performing discretionary functions generally are shielded

18  from liability for civil damages insofar as their conduct does not violate clearly established

19  statutory or constitutional rights of which a reasonable person would have known.  Harlow v.

20  Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune

21  from suit based on the doctrine of qualified immunity, the court considers two questions.  One is,

22  taken in the light most favorable to the party asserting the injury, do the facts alleged show the

23  officer's conduct violated a constitutional right?  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A

24  negative answer ends the analysis, with qualified immunity protecting defendant from liability.

25  Id.  If a constitutional violation occurred, the court further inquires "whether the right was clearly

26  established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct would be

1  clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202.

2  The inquiry into whether a right was clearly established "must be taken in light of the specific

3  context of the case, not as a broad general proposition." Id. at 201.  "[T]he right the official is

4  alleged to have violated must have been 'clearly established' in a more particularized, and hence

5  more relevant, sense: The contours of the right must be sufficiently clear that a reasonable

6  official would understand that what he is doing violates that right." Anderson v. Creighton, 483

7  U.S. 635, 640 (1987).

8          The district court may decide the order of addressing the two prongs of its

9  qualified immunity analysis in accordance with fairness and efficiency and in light of the

10  circumstances of a particular case.  Pearson v. Callahan, 555 U.S. 223 (2009).  Given the

11  particular circumstances of this case, this court sees no reason to depart from the traditional order

12  of analysis presented in Saucier.

13          The Supreme Court has long held that deliberate indifference to a serious medical

14  need, which plaintiff alleges against defendant Lipton, violate the Eighth Amendment.  See

15  Hudson and Estelle, supra.  The factual circumstances alleged do not take the claim out of those

16  established lines of constitutional law.  Lipton is not entitled to qualified immunity.

17          Accordingly, IT IS HEREBY ORDERED that the motion for clarification (Docket

18  No. 74) is moot.

19          IT IS RECOMMENDED that:

20          1.  The motion to dismiss (Docket No. 57) be granted for failure to exhaust

21  administrative remedies as to the following claims: (a) as to plaintiff's claim that defendant

22  Bainbridge used excessive force on September 21, 2007; (b) as to plaintiff's claim that

23  Bainbridge used excessive force on October 16, 2007; and (c) as to plaintiff's claim that

24  defendants Follosoco and Lipton used excessive force on November 6, 2007.

25          2.  The motion for summary judgment (Docket No. 58) be denied as to the claim

26  that defendant Lipton was deliberately indifferent to plaintiff's serious medical need on

1   September 13, 2007.

2          These findings and recommendations are submitted to the United States District

3   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

4   one days after being served with these findings and recommendations, any party may file written

5   objections with the court and serve a copy on all parties.  Such a document should be captioned

6   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7   shall be served and filed within fourteen days after service of the objections.  The parties are

8   advised that failure to file objections within the specified time may waive the right to appeal the

9   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10   Dated: June 21, 2012

11

12                                          CAROLYN K. DELANEY
                                            UNITED STATES MAGISTRATE JUDGE
13

14

15

16   3
17   jone2607.57

18

19

20

21

22

23

24

25

26